UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES CHAVEZ,

Petitioner,

v.

LeGRAND, WARDEN, et al.,

Respondents.

Case No. 3:13-cv-00548-MMD-WGC

ORDER

Before the Court for a decision on the merits is petitioner Chavez's amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 22).

I.   **BACKGROUND**[1]

In November 2006, a jury in the Second Judicial District Court for Nevada found Chavez guilty of four counts of sexual assault on a child. The victim of the assaults was Chavez's daughter. The state district court sentenced Chavez to four consecutive terms of life in prison with minimum parole eligibility after twenty years on each count. Chavez appealed.

On direct appeal, Chavez raised claims asserting violations of the Confrontation Clause of the Sixth Amendment, violations of Nevada's rules of evidence, a claim of juror misconduct, and a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The Nevada Supreme Court affirmed Chavez's conviction and sentence.

---

[1]The background information for this case was taken from the exhibits filed at ECF Nos. 16 through 21 and this Court's own docket entries.

1    Chavez subsequently filed a proper person petition for writ of habeas corpus. After

2    appointment of counsel, Chavez filed a supplemental petition. The state court held an

3    evidentiary hearing, and then entered an order denying the state petition. Chavez

4    appealed.

5    On appeal, Chavez raised various claims of ineffective assistance of counsel, and

6    asserted a claim of cumulative error. The Nevada Supreme Court affirmed the state

7    district court's order denying the state petition.

8    On October 2, 2013, this Court received a federal habeas petition from Chavez

9    initiating this proceeding. On December 23, 2013, Chavez filed, with the assistance of

10   appointed counsel, an amended petition. Pursuant to a motion to dismiss filed by

11   respondents, the Court issued an order for Chavez to show cause why Ground Two of

12   his amended petition should not be dismissed as procedurally defaulted. After this Court

13   found Chavez could not make such a showing and dismissed the claim, respondents filed

14   an answer to Grounds One and Three. Chavez subsequently filed his reply. Grounds One

15   and Three are now before the Court for a decision on the merits.

16   **II.    STANDARDS OF REVIEW**

17   This action is governed by the Antiterrorism and Effective Death Penalty Act

18   (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

19   An application for a writ of habeas corpus on behalf of a person in
20   custody pursuant to the judgment of a State court shall not be granted with
     respect to any claim that was adjudicated on the merits in State court
21   proceedings unless the adjudication of the claim —

22   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as determined
23   by the Supreme Court of the United States; or

24   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
25   court proceeding.

26   28 U.S.C. § 2254(d).

27   A decision of a state court is "contrary to" clearly established federal law if the state

28   court arrives at a conclusion opposite that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).”). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## III.   DISCUSSION

### A.   Ground One

In Ground One, Chavez alleges that the state trial court violated his rights under the Confrontation Clause of the Sixth Amendment by admitting statements by the deceased victim, which included her preliminary hearing testimony, her video-taped statements to the police, and other statements to law enforcement.

Under the Confrontation Clause of the Sixth Amendment, testimonial statements of witnesses not present a trial are admissible “only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.” *Crawford v. Washington*, 541 U.S. 36, 59 (2004). “To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.” *Id.* at 61. The Confrontation Clause guarantees only “an opportunity for effective cross-examination, not cross-examination that is effective whatever way, and to whatever extent, the defense might wish.” *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

The victim in this case, Chavez's daughter, testified at the preliminary hearing but died prior to trial. Chavez filed a pre-trial motion to dismiss premised on an argument that her preliminary hearing testimony and her statements to law enforcement, family members, and various health care providers were all inadmissible at trial because the presentation of such evidence would violate either the Confrontation Clause or rules of evidence prohibiting the introduction of hearsay. (ECF No. 16-7.) The trial court ruled that statements the victim made to “the forensic nurse and to her siblings would not be admitted, but that the preliminary hearing testimony and statements the victim made to law enforcement was admissible because Chavez had an opportunity to cross-examine

1    her on those statements at the preliminary hearing. (ECF No. 16-14, p. 25-26.)[2] With

2    respect to statements the victim made to her mother, the court suggested that those

3    statements would most likely be admissible at trial. *Id.* at 26-27.

4        At trial, the victim's preliminary hearing testimony was read to the jury. (ECF No.

5    17-1 at 146-48.) In addition, a police sergeant (Dreelan) testified that the victim had told

6    him that her father had sexually assaulted her the day before he interviewed her. (ECF

7    No. 17 at 104.) The prosecution was also permitted to play a videotape of a police

8    detective (Armitage) interviewing the victim about the sexual assaults and present the

9    detective's testimony about what the victim told her during a second interview. (ECF No.

10   17-1 at 153, 157-59.) A marriage and family therapist (Evarts) who treated the victim,

11   testified that the victim had told her "that at five years old, her dad had ripped open her

12   vagina." (ECF No. 16-16 at 35-36.)

13       On direct appeal, Chavez argued that it was constitutional error for the trial court

14   to admit into evidence (1) the preliminary hearing testimony, (2) the videotape of the

15   interview and the victim's statements to Dreelan and to Armitage, and (3) the victim's

16   statements to Evarts.

17       In denying Chavez's Confrontation Clause claim, the Nevada Supreme Court first

18   discussed the rule announced in *Crawford*, then surveyed its own Confrontation Clause

19   jurisprudence. *Chavez v. State*, 213 P.3d 476, 483 (Nev. 2009). With respect to the trial

20   court's admission of the preliminary hearing testimony and the victim's statements to law

21   enforcement, the court determined that the statements were testimonial and that the

22   declarant was unavailable at the time of trial. *Id.* at 484, 486.

23       As for the defendant's opportunity to cross-examine the witness, the Nevada

24   Supreme Court stated as follows:

25           Chavez argues that the limited nature of a preliminary hearing does
         not provide a defendant an adequate opportunity to cross-examine a
26       witness appearing against him. He urges this court to adopt the standards

27   _____

28   [2]References to page numbers for documents on the Court's electronic docket are
     based on CM/ECF pagination.

set forth in *People v. Fry*, 92 P.3d 970 (Colo.2004), and *State v. Stuart*, 279 Wis.2d 659, 695 N.W.2d 259 (2005). Both cases are inapposite.

In *Fry*, the Colorado Supreme Court found that a defendant's opportunity to cross-examine a witness during a preliminary hearing was not adequate for Confrontation Clause purposes because of "the limited nature of the preliminary hearing" in that state. 92 P.3d at 976-77 (explaining that in Colorado a "preliminary hearing is limited to matters necessary to a determination of probable cause"). In contrast, Nevada law is generally more permissive with regard to a defendant's right to discovery and cross-examination at the preliminary hearing. *See* NRS 171.196(5) ("The defendant may cross-examine witnesses against him and may introduce evidence on his own behalf."); NRS 171.1965(1) (stating that, before the preliminary hearing, the defendant is entitled to written or recorded statements by the defendant or a witness, reports, and other evidence within the prosecutor's custody or possession). We do not find anything in our state law that would hinder a defendant's opportunity to cross-examine a witness at a preliminary hearing.

In *Stuart*, the Wisconsin Supreme Court reversed a murder conviction, finding that the district court had erroneously admitted the preliminary hearing testimony of the defendant's brother. 695 N.W.2d at 267. During the preliminary hearing, the magistrate ruled that pursuant to Wisconsin law, the defense could not ask the brother a question that was meant to cast doubt on the brother's credibility at the preliminary hearing stage. *Id*. At trial, the brother became unavailable, and the court admitted his preliminary hearing testimony. *Id*. The Wisconsin Supreme Court reversed, determining that, at the trial level, a defendant had a right to question a witness's motive and credibility and, therefore, admitting the preliminary testimony violated the defendant's right to confrontation. *Id*.

Unlike Wisconsin, Nevada law does not preclude a defendant from questioning a witness's credibility or motive during a preliminary hearing. While the defendant in *Stuart* could not question the witness's credibility and motive, Chavez questioned D.C.'s credibility in a wide-ranging cross-examination.

Chavez's cross-examination of D.C. at the preliminary hearing consisted of almost double the amount of questions that were asked on direct examination. D.C. testified under oath and in Chavez's presence. At the time Chavez conducted the cross-examination, nearly all the discovery was complete. In fact, most of Chavez's extensive cross-examination consisted of questions based upon statements that D.C. had made to authorities about the sexual abuse. Specifically, we note that Chavez had a copy of D.C.'s videotaped statements to police, as well as a list of the witnesses that would be testifying during the State's case in chief. Therefore, Chavez had most, if not all, of the pertinent facts of the State's case in chief at the preliminary hearing.

Chavez used the discovery to ask D.C. specific questions about the molestation, including details about each instance of abuse, the description of her father's penis, and how she cleaned up afterwards by using socks. He questioned D.C.'s veracity and motives by repeatedly asking her whether she told specific people about the sexual abuse during the five years that it was ongoing.  Chavez asked D.C. whether her brothers or her

sister ever saw the sexual abuse and about the conversation in the car between D.C., her siblings, and Block, and how and why D.C. told her mother about the abuse. Chavez asked D.C. specific questions about her parents' relationship. He further questioned D.C. about the alleged accident on the fence post and how it led to her initial injuries. He even asked D.C. if she was seeing a therapist.

These questions were only part of the 240 questions Chavez asked D.C. The record leaves no doubt in our minds that the preliminary hearing afforded Chavez an opportunity to cross-examine the unavailable witness, D.C., on the statements that she had made to her mother, health care providers, and law enforcement officers regarding the sexual abuse. The nature of the cross-examination was extensive and thorough because the defense took, and the magistrate judge allowed, full advantage of the opportunity to cross-examine. In fact, the magistrate judge only interrupted Chavez's cross-examination once, when Chavez asked D.C. a series of questions about her mother's new boyfriend. And, even then, the magistrate judge said that he would not allow the line of questioning unless counsel could explain its relevance. Chavez simply moved on to other questions. There is no evidence that the magistrate judge placed any inappropriate restrictions on the scope of Chavez's cross-examination of D.C. Rather, the record shows, save for one appropriate admonishment, the magistrate judge allowed Chavez to extensively question D.C. on all the key pieces of evidence the State had obtained against Chavez. Because discovery was almost entirely complete, Chavez was able to take full advantage of the opportunity to cross-examine the State's key witness against him at the preliminary hearing.

Therefore, in this instance, because the discovery was almost entirely complete and the magistrate judge allowed Chavez unrestricted opportunity to confront D.C. on all the pertinent issues, we conclude that Chavez's Confrontation Clause rights were not violated by the admission of D.C.'s preliminary hearing testimony at trial.

*Id.* at 48-86 (footnote omitted).

Then, with respect to the victim's statements to law enforcement, the Nevada

Supreme Court held as follows:

The only remaining issue is whether Chavez had opportunity to cross-examine D.C. regarding the videotaped testimony and her other statements to police. Because of discovery, Chavez had the statements that D.C. made to Detective Armitage and Sergeant Dreelan, including a copy of the videotape, before the preliminary hearing. Chavez, therefore, had the opportunity to confront D.C. on all of her statements to law enforcement officers at the preliminary hearing. Whether he questioned D.C. on each and every statement is not the relevant inquiry, as the Confrontation Clause only guarantees the opportunity to cross-examine, not a cross-examination in whatever way the defense might wish. As we have already concluded, Chavez was afforded an adequate opportunity to confront D.C. at the preliminary hearing. The breadth and scope of Chavez's cross-examination did not run afoul of the Confrontation Clause because of the nearly complete discovery available to Chavez at the time and manner in which the magistrate judge allowed the cross-examination to proceed.

7

1    *Id.* at 486.

2          The question before this Court is whether the Nevada's Supreme Court's

3    adjudication of Chavez's Confrontation Clause claim resulted in a decision that was

4    contrary to, or involved an unreasonable application of, clearly established Federal law,

5    as determined by the Supreme Court of the United States.[3] The parties do not dispute

6    that the statements at issue were testimonial or that the victim was unavailable to testify

7    at trial.[4]

8          Thus, the inquiry here focuses on the Nevada Supreme Court's determination that

9    Chavez had, for the purposes of *Crawford*, an opportunity to cross-examine the victim.

10   On this particular point, the Supreme Court has provided little guidance as to the types of

11   proceedings that do or do not qualify as providing a defendant with a sufficient opportunity

12   for cross-examine for the purposes of *Crawford*. However, prior to *Crawford*, the Court

13   rejected the notion that the fundamental differences between a preliminary hearing and a

14   trial disqualified it from providing an adequate opportunity. *See Ohio v. Roberts*, 448 U.S.

15   56, 73 n. 12 (1980) (holding that, in the absence of "extraordinary" circumstances, the

16   opportunity for cross-examination at a preliminary hearing is sufficient to satisfy the cross-

17   examination requirement); *abrogated on other grounds by Crawford*, 541 U.S. 36.

18         In addition, a decision on point from the Court of Appeals for the Sixth Circuit

19   provides sound guidance here. In *Williams v. Bauman*, 759 F.3d 630 (6th Cir. 2014), as

20   in this case, a witness to the charged crimes testified at the defendant's preliminary

21   hearing, but died before trial. 759 F.3d at 634. The state appellate court in *Williams*, as in

22   this case, concluded that the trial court did not violate the defendant's right to

23         _____

24         [3]Chavez makes no argument, nor is there any indication, that he Nevada Supreme
     Court's rejection of this claim was based on an unreasonable determination of the facts
     in light of the evidence presented in the State court proceeding.

25         [4]With respect to the victim's statements to Evarts, the Nevada Supreme Court
     determined that the statements were non-testimonial and admissible under NRS §
26   51.115, which provides for the admission of hearsay statements "made for purposes of
     medical diagnosis or treatment and describing medical history, or past or present
27   symptoms, pain or sensations, or the inception or general character of the cause or
     external source thereof." *Id.* at 486-87. Chavez does not challenge that determination in
28   his habeas petition or in his reply brief.

1  confrontation by allowing the witness's preliminary hearing testimony to be read to the

2  jury. *Id.* at 634.

3        On habeas review, the Sixth Circuit noted that, in a recent case, it had "observed

4  that 'there is some question whether a preliminary hearing necessarily offers an adequate

5  prior opportunity for cross-examination for Confrontation Clause purposes.'" *Id.* at 636

6  (citing *Al-Timimi v. Jackson*, 379 Fed. Appx, 435, 437 (6th Cir.2010)). The court then

7  reasoned:

8          If there is room for reasonable debate on the issue, the state court's
        decision to align itself with one side of the argument is necessarily beyond

9          this court's power to remedy under § 2254, even if it turns out to be wrong.

10  *Id.* (citing *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

11        In the Ninth Circuit there is no published opinion that definitively settles the issue,[5]

12  but unpublished decisions favor the conclusion that a preliminary hearing,

13  notwithstanding its fundamental difference from a trial, provides an adequate opportunity

14  for cross-examination for the purposes of *Crawford. See, e.g., Cogswell v. Kernan*, 648

15  F. App'x 624, 626 (9th Cir.), *cert. denied*, 137 S. Ct. 452, 196 L. Ed. 2d 334 (2016). At a

16  minimum, there is at least "room for reasonable debate" on the issue. Thus, as in *Williams*,

17  this Court must defer to the Nevada Supreme Court's decision to reject Chavez's

18  Confrontation Clause claim.

19        Ground One is denied.

20      **B.**    **Ground Three**

21        In Ground Three, Chavez alleges that he was deprived of effective assistance of

22  counsel, in violation of his rights under the Sixth Amendment, because counsel (1) failed

23  to object to certain prejudicial statements by the prosecutor; (2) failed to object to the

24  admission of statements the victim made to her therapist; (3) asked the therapist on cross-

25  examination whether she thought the victim had been coached, thereby allowing the

26  _____

27      [5]Chavez cites only to the two state court cases discussed in the Nevada Supreme
Court opinion — *Stuart* and *Fry* — as instances in which a reviewing court concluded that

28  a preliminary hearing did not provide a defendant with an opportunity for cross-
examination as contemplated in *Crawford.* (ECF No. 60.)

1  therapist to vouch for the victim's credibility; (4) failed to object to the admission of autopsy

2  photographs of the victim; and (5) failed to object to the State's inclusion of a theory of

3  liability based on events that occurred on the Paiute Indian reservation.

4      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded

5  a two prong test for analysis of claims of ineffective assistance of counsel ("IAC"): a

6  petitioner claiming ineffective assistance of counsel must demonstrate (1) that the

7  defense attorney's representation "fell below an objective standard of reasonableness,"

8  and (2) that the attorney's deficient performance prejudiced the defendant such that "there

9  is a reasonable probability that, but for counsel's unprofessional errors, the result of the

10  proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

11          *1.    Prosecutor's statements and victim's statements to therapist*

12      The statements underlying Chavez's first IAC claim are (1) the prosecutor's

13  comment during opening argument that the victim had told her mother that Chavez "laid

14  me on the floor like a baby changing my diaper and shoved his penis inside of me, and I

15  tore," and (2) the prosecutor's references, while questioning witnesses, to Chavez

16  "jamming" his penis into the victim. (ECF No. 16-16 at 15, ECF No. 18 at 87, ECF No. 19

17  at 115.)

18      The statement underlying Chavez's second IAC claim is Evart's comment during

19  her testimony that the victim had told her that Chavez "ripped open her vagina." (ECF No.

20  16-16 at 35-36.)

21      Chavez presented these instances of alleged IAC for failure to object as one claim

22  in his state post-conviction proceeding. (ECF No. 21-4 at 11-13.) The Nevada Supreme

23  Court addressed the claim as follows:

24          Chavez argues that counsel was ineffective for failing to object to
           prejudicial statements made by the prosecutor and a witness. Chavez failed
25          to demonstrate deficiency or prejudice. The statements that Chavez asserts
           counsel should have objected to were direct quotes from the victim
26          describing what happened to her and the language used accurately
           described the incidents as alleged and were not inflammatory. Accordingly,
27          Chavez failed to demonstrate that counsel was ineffective for failing to
           object on this ground.
28

1    (ECF No. 21-7 at 3.)

2             2.     *Coaching question on cross-examination*

3        With respect to Chavez's allegation that counsel was opening the door for

4 impermissible vouching, defense counsel asked Evarts the following question on cross-

5 examination: "You did not give — in your treatment and meetings with [the victim], ever

6 entertain the premise that she had not been molested, did you?" (ECF No. 16-16 at 48.)[6]

7 In response, Evarts stated that she recognized that children she treated were not always

8 telling the truth, but, in this case, "I did not for — I mean, for a minute, think she was lying."

9 (*Id.*) Then, on redirect examination, the prosecutor asked Evarts several questions as to

10 whether she considered the possibility the victim was not telling the truth, including the

11 possibility the victim had been coached. (*Id.* at 54-60.)

12        On direct appeal, the Nevada Supreme Court rejected Chavez's claim that the trial

13 court erred in not granting defense counsel's motion for a mistrial based on impermissible

14 vouching by Evarts. *Chavez*, 213 P.3d at 487 n.2. In particular, the court concluded that,

15 "Evarts' testimony went to her observations of [the victim] as compared to other children

16 she had treated, not to the veracity of [the victim's] allegations." *Id.*

17        In Chavez's state post-conviction proceeding, the Nevada Supreme Court held as

18 follows:

19          Chavez argues that counsel was ineffective for opening the door for
20 an expert witness to vouch for the victim's veracity. Chavez failed to
     demonstrate deficiency or prejudice. On direct appeal, this court stated that
21 the expert's testimony did not go to the veracity of the victim's allegations
     and was not vouching. *Chavez v. State*, 125 Nev. 328, 343 n. 2, 213 P.3d
22 476, 487 n. 2 (2009). Accordingly, Chavez failed to demonstrate that
     counsel was ineffective for failing to preclude the admission of this
23 testimony.

24 (ECF No. 21-7 at 3.)

25 ///

26 _____

27        [6]Chavez alleges in his petition that defense counsel "asked Ms. Evarts whether
she believed [the victim] could have been coached." (ECF No. 22 at 20.) However, he
does not cite to (nor is the Court able to find) where in the record defense counsel asked
28 this specific question.

3.    *Admission of autopsy photographs*

At trial, the State presented autopsy photographs of the victim for the purpose of demonstrating injuries to her vaginal area. (ECF No. 17-1 at 92-93.) According to Chavez, counsel was ineffective in not objecting to the admission of these photographs because they invited the jury to speculate as to the victim's cause of death.

The Nevada Supreme Court addressed this claim as follows:

> Chavez argues that counsel was ineffective for failing to object to the introduction of photographs of the victim's vagina taken during her autopsy because it allowed the jury to infer that he was responsible for the victim's death. Chavez failed to demonstrate deficiency or prejudice. Jurors were already informed that the victim was unavailable because she was deceased and were instructed not to draw any inferences from her death. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) (presuming that jurors follow the instructions they are given). Accordingly, Chavez failed to demonstrate that counsel was ineffective for failing to object to the autopsy photographs on this ground.

(ECF No. 21-7 at 4.)

4.    *Events on Indian reservation*

Chavez contends that the State filed amended charging documents that expanded the time period of the charged conduct to include events that could have only occurred on tribal land. He further contends that, because he and his children are members of the Paiute tribe, the State did not have jurisdiction over the alleged conduct. Accordingly, he claims that trial counsel was ineffective in failing to object to the amended charging documents.

> Chavez argues that counsel was ineffective for failing to object to the mention of an incident that occurred on tribal land. During opening statements, the prosecutor relayed the victim's description of an incident in which Chavez tore her vagina during a sexual assault and convinced her to tell the family that she injured it on a fence. Chavez asserts that because the jury asked multiple questions about the incident, which the State had no authority to prosecute because it occurred on tribal land, it likely found him guilty of that act rather than an act which was charged. Chavez failed to demonstrate deficiency or prejudice. In finding Chavez guilty, jurors found that each act was committed in Washoe County beyond a reasonable doubt. Further, counsel testified at the evidentiary hearing that had the State not referenced the act, he would have because Chavez's claim that the victim fell on a fence explained how she sustained vaginal injuries and was the crux of his defense. *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (noting that counsel's strategy on how to proceed at trial

12

1
2
3

is a decision that is "Virtually unchallengeable absent extraordinary circumstances." (quoting *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990)) *abrogated on other grounds by Harte v. State*, 116 Nev. 1054 n. 6, 13 P.3d 420, 432. n. 6 (2000)). Accordingly, Chavez failed to demonstrate that counsel was ineffective for failing to object on this ground.

4

(ECF No. 21-7 at 2-3.)

5
6
7
8
9

The Nevada Supreme Court applied the correct federal law standard — i.e., *Strickland* — to each of Chavez's IAC claims. Chavez has not demonstrated that any of the state court's decisions discussed above constituted an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.[7] Accordingly, this Court must deny Ground Three.

10

**IV.    CONCLUSION**

11
12

For the reasons set forth above, Chavez's amended petition for habeas relief is denied.

13

*Certificate of Appealability*

14
15
16
17
18

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

19
20
21
22
23
24
25
26

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

27
28

---

[7]Indeed, Chavez does not address the merits of Ground Three at all in his reply brief. (ECF No. 60.)

1    Having reviewed its determinations and rulings in adjudicating Chavez's petition,

2  the Court finds that reasonable jurists could debate the Court's resolution of Ground One,

3  above. Specifically, it is at least arguable that the Nevada Supreme Court unreasonably

4  applied clearly established federal law in determining that the trial court did not violate

5  Chavez's right to confrontation in admitting statements made by the deceased victim.

6  The Court declines to issue a certificate of appealability for its resolution of any other

7  procedural or substantive issue.

8    It is therefore ordered that petitioner's amended petition for writ of habeas corpus

9  (ECF No. 22) is denied. The Clerk will enter judgment accordingly.

10    It is further ordered that a certificate of appealability is granted as to the following

11  issue:

12    Whether this Court erred in its resolution of Ground One by
   concluding that it must defer to the Nevada Supreme Court's decision that
13   Chavez's rights under the Confrontation Clause were not violated by the
   admission at trial of statements made by the deceased victim.

14    It is further ordered that all pending motions for extension of time (ECF Nos. 51,

15  52, 53, 56, 57, 58, 59) are granted *nunc pro tunc* as of their respective filing dates.

16    DATED THIS 22nd day of February 2017.

17

18    _____

19    MIRANDA M. DU
   UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28